## Bodosky v. Scullin

*Franklyn E. Conflenti,* for plaintiffs.
*James A. Wood,* for defendant.

THOMAS, *P.J.,* May 21, 1990 — Plaintiffs brought a complaint alleging malpractice against defendant physician as a result of alleged negligent preoperative advice and a negligently performed back operation on August 12, 1986. The operation was apparently a lumbar laminectomy with the excision of a disc. Defendant doctor acting through counsel attacked venue and a lack of specificity in the complaints. This court, speaking through Judge Gordon Miller, resolved these issues in a memorandum and order May 8, 1990, and determined this court was the proper venue and that the complaints were sufficiently detailed to adequately advise the doctor of plaintiffs' alleged theory of recovery.

The matter is now back before this court on a discovery issue.

## DISCOVERY

We note initially that defendant's motion to strike plaintiffs' interrogatories was attached to the interrogatories and apparently has not been officially filed in the Prothonotary's Office. We direct the prothonotary to now file defendant's motion to strike interrogatories (with attached interrogatories) and consider the same as having been officially filed sometime between March 21 and April 25, 1990.

As noted, plaintiffs interrogatories are attached to defendant's motion to strike said interrogatories. These written interrogatories comprise two and one-half pages of instructions on how to answer the questions, 99 pages of typewritten questions, 241 numbered questions and 409 lettered subparts to the 241 questions.

Defendant contends that these voluminous "boilerplate" interrogatories are in violation of the letter and spirit of Discovery Rules 4005(c) and 4011(b), and impose unreasonable annoyance, burden and expense upon defendant.

Plaintiffs have filed a motion to dismiss defendant's objections to their interrogatories, and at argument their contention was that to adequately proceed with this case all of their questions were relevant and they are entitled to answers to all of their questions.

We have neither the time nor inclination to analyze each of the 650 questions and write a learned treatise on when sheer volume and minutia constitute an abuse of discovery procedures. Defendant's brief cites several examples of ludicrous inquiry and cite some of the following:

(A) Requiring the doctor to give the title, name of author, name of publisher, date of publication of

each medical book he owned or had in his possession at the time of "the occurrences" (question 49).

(B) Books referred to or relied upon in diagnosing, treating and reaching an opinion regarding plaintiff's condition (question 52).

(C) The title, name, address, publisher of any medical journal, magazine, newsletter, circular, or any publications to which the doctor subscribes or has ever read in enlarging his medical knowledge (question 54).

(D) Whether any expert having been employed to assist defendant has ever been a witness in any lawsuit, the name of the lawsuit, the kind of suit, the name of the court, the date of the filing of the case and the name and address of any party for whom that person gave evidence (question 230).

We also note that question 12 asks for disclosure of the doctor's gross income from medical practice in the last five years; any awards or honors received during his medical career and the details thereof (question 47); whether he considered the relationship with plaintiff to be a physician/patient relationship (question 57); and if so the date, place and reason for each professional dealing or contact the doctor had with the patient (question 58); whether the doctor ever made a physical examination of plaintiff and if so then describe in seven subparagraphs the results thereof (questions 75 and 76). We note that in answering question 76, it would take the doctor an inordinate amount of time to precisely answer the seven sub-divisions of this question. We also note that for some unascertained reason, plaintiffs want to know whether the doctor ever sells or dispenses drugs to his patients (questions 164 and 165), and if so, the name of each person who has supplied him with drugs, a description of the records kept in dispensing said drugs, the amount of money he expended for the purchase of

said drugs for the last five years and the profit margin he makes on dispensing said drugs.

We could go on and cite other questions in this abuse of the discovery process, but decline to do so. We are satisfied that this voluminous list of interrogatories constitutes a classic example of annoyance, abuse and violation of the discovery process. We do not intend to make individual rulings on all 650 questions in order to give guidance to plaintiffs' counsel in redrafting the interrogatories. This seems to be a well-pled straightforward malpractice case, and we have no objection to interrogatories propounded that would aid in trial preparation or that would aid as a minimal background of information when the doctor's deposition is taken. To require the doctor, under the guise of allowable discovery, to write an autobiography of his professional life and assume the burdensome duty of extensive investigation of the professional careers of others who have assisted in the operating room does not make sense, and we decline to require the doctor to do so. In sustaining the objection to the interrogatories in general, we will require plaintiffs to file a condensed list of material interrogatories not to exceed 25 questions. If there are relevant issues material to trial preparation of this case and are relevant to plaintiffs' theory of recovery against the doctor, the same could best be explored in a one-hour deposition rather than hours of laborious treatise writing by the doctor. We enter the following

## ORDER

And now, May 21, 1990, defendant's motion to strike plaintiffs' interrogatories is granted. Plaintiffs may resubmit interrogatories within 30 days covering essential trial preparation information and said interrogatories shall be simple in form and not number more than 25.